UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas A. SHAHEEN, Defendant-
Appellant.

No. 71–1273.

United States Court of Appeals,
Seventh Circuit.

June 12, 1971.

F. Lee Bailey, Boston, Mass., John Powers Crowley, Chicago, Ill., Bailey, Alch & Gillis, Boston, Mass., Crowley &

Nash, Chicago, Ill., Ralph A. Muoio, Walter B. Slocombe, Caplin & Drysdale, Washington, D. C., for defendant-appellant.

William J. Bauer, U. S. Atty., Chicago, Ill., Johnnie M. Walters, Asst. Atty. Gen., Janet R. Spragens, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before KILEY, PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

■ This is an appeal from an order denying a motion to quash a writ *ne exeat republica.* The writ issued pursuant to 26 U.S.C. § 7402(a) [1] in an action filed by the United States to collect alleged income tax deficiencies of $452,-534.89. As the principal action is still pending in the district court, the appeal is from an interlocutory order. The Government does not question our appellate jurisdiction. Since the extraordinary writ entered by the district court is in the nature of an injunction, we are satisfied that we have jurisdiction of the appeal pursuant to 28 U.S.C. § 1292(a).[2]

By its terms the writ restrains appellant "from departing out of the jurisdiction of this Court until further order of this Court, and requiring him to give security in the amount of $450,000." The writ was originally construed by the Government and by the district court to require imprisonment of appellant since he was unable to post a $450,000 bond. On emergency application, we found that the record did not warrant the confine-

---

1. "(a) The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica,* orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."

2. The procedure specified in 28 U.S.C. § 1292(b) for appeals from interlocutory orders "not otherwise appealable" was not followed.

We also believe our jurisdiction may be supported by the "collateral order" doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545–547, 69 S.Ct. 1221, 93 L.Ed. 1528; Baxter v. United Forest Products Co., 406 F.2d 1120, 1123–1125 (8th Cir. 1969) cert. denied 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42.

ment of appellant either in prison or within the Northern District of Illinois, and ordered his release from custody without prejudice to the continuing restraint of the writ against his departure from the United States. We now conclude that the writ must be vacated.

I.

The writ was entered on the *ex parte* application of the Government. The supporting affidavits established the following facts.

Appellant is an American citizen who formerly resided in Chevy Chase, Maryland. For several months prior to August 1970, the Internal Revenue Service had been investigating the accuracy of his tax returns for the years 1966 and 1967; appellant had commenced litigation tending to impede that investigation, and certain negotiations between his counsel and the Service had taken place.

On August 3, 1970, appellant sold his residence for a price of $190,000. About two weeks later his household goods were shipped, in the name of a third party, to a destination in London, England. The furnishings belonging to his daughter and her husband were also shipped to London in late August. On August 28, 1970, appellant borrowed $80,000 secured by a conveyance of his interest in real estate adjacent to his former residence.

On September 4, 1970, appellant, accompanied by his wife and daughter, traveled by air from Boston to London. On September 8, 1970, appellant's counsel conferred with the District Director of Internal Revenue in Boston. Apparently the Government then learned of appellant's departure.

On September 14, 1970, the Government made a jeopardy assessment against appellant in the amount of $151,-104.40. On March 19, 1971, an additional jeopardy assessment of $301,430.49 was made. All administrative methods of collecting the asserted tax liability of appellant were exhausted with the result

that only $4,139.28 had been collected. Credit for this amount had been allowed in making the jeopardy assessments which, therefore, aggregated $452,534.-89, plus interest, when this action was commenced on April 1, 1971.

Certain assets of appellant were held in trust by his attorneys, but they failed and refused to surrender such property in response to notices of levy and a final demand on behalf of the Treasury. Apart from the trust, the Government was unaware of any assets belonging to the taxpayer located in the United States. It levied on appellant's household goods while they were on the high seas, but appellant's son-in-law recovered the goods in an action brought in the English courts.

On April 1, 1971, appellant was present within the Northern District of Illinois for the purpose of attending a bail hearing in connection with a criminal charge pending against him in that court. The District Director of Internal Revenue for Baltimore, Maryland, based on the facts set forth above, concluded that appellant would depart quickly from the United States if not restrained, and that if appellant were allowed to depart, the tax claims against him would be wholly lost.

Neither appellant nor his counsel was present in court, or had received prior notice of the proceeding, when the writ issued.

II.

On the day following the issuance of the writ, counsel for appellant presented an oral motion to quash the writ.[3] Judge Hoffman, to whom the case had been assigned, interrupted a trial to hear the motion as an emergency matter. Because the writ had been entered by another judge, he required appellant to go forward with the presentation of evidence showing why the writ should be quashed. We believe appellant correctly contended that the burden of proof was on the Government to estab-

---

3. The motion slip presented to the clerk simply stated, "Motion to Quash Writ Ne Exeat."

lish that the writ should remain in effect. United States v. Robbins, 235 F. Supp. 353, 357 (E.D.Ark.1964). However, we are not persuaded that the record before us demonstrates any prejudice to appellant because his evidence was heard first. The papers on file gave him fair notice of the substance of the Government's case.

Appellant's evidence supplemented and explained, but did not contradict, the facts as set forth above. He frankly confirmed his intention to depart the United States as soon as he could. He had been residing in Rome for about four months and expressed a desire to rejoin his wife and minor children promptly. Moreover, according to his testimony, adverse publicity related to financial difficulties of a business associate and to his own indictment on a charge unconnected with the tax matters has made it impossible for him to realize earnings in the United States as a financial consultant. He expressed optimism, however, with regard to his earnings potential in Europe.

He denied that he would never return to the United States if permitted to leave. His three oldest children reside in this country. He has voluntarily returned for court appearances in the criminal case. He testified that except for about $3,000 that he drew from a company in Italy, all of his assets are in the United States. Furthermore, he denies liability for the claimed tax deficiencies and has a substantial interest in defeating the Government's claim.

The amounts realized from the transactions described by the Government were used to discharge indebtednesses, reinvested, or placed in trust with his Boston counsel. He estimated that the trust assets had a value of "several hundred thousand dollars" and with proper financing could "be increased to well over a million." The trust was created on September 14, 1970, the date of the first jeopardy assessment. The documents were executed in London, England, and provide that the first $250,000 of trust assets shall be available for payment of fees of his attorneys, who apparently include the trustees of the fund as well as his son-in-law. The record does not disclose the extent to which trust assets may ultimately be subject to levy or collection by the Government.

Details of various financial matters are discussed in the evidence. The sums mentioned, plus appellant's apparent financial ability to live in Rome in a style appropriate to his intended business activities, suggest that he may have more property abroad than the record indicates. There is no direct proof, however, that his foreign assets are significant.

The district court made no findings of fact and expressed no conclusions of law. He simply denied the motion to quash the writ and refused an oral request to reduce the bond.

### III.

The power of a district court to issue a writ *ne exeat republica*, though seldom exercised,[4] is not questioned. Its common law antecedent, the writ *ne exeat regnum*, was a prerogative writ enabling the sovereign to compel a man to remain within the realm to help in the defense of his country.[5] An equally

---

4. The only reported case construing 26 U.S.C. § 7402(a) which has been called to our attention is United States v. Robbins, 235 F.Supp. 353 (E.D.Ark.1964). It is not unlikely, of course, that applications for the writ which were either unsuccessful, or which resulted in the prompt settlement of pending litigation, are unreported. The manner in which it was originally employed in this case might well have caused many reluctant taxpayers to change their attitude about the desirability of a prompt settlement with the Internal Revenue Service.

5. "By the common law, (n) every man may go out of the realm for whatever cause he pleaseth, without obtaining the king's leave; provided he is under no injunction of staying home; (which liberty was expressly declared in King John's great charter, though left out in that of Henry III,) but because that every man ought of right to defend the

proper office of the writ is to aid the sovereign to compel a citizen to pay his taxes. As at common law, however, it is an extraordinary writ which should issue only in exceptional cases.

■ When issued, the writ restrains the right possessed by "every man [to] go out of the realm for whatever cause he pleaseth." This right to travel is "a constitutional liberty closely related to rights of free speech and association, * * *." Aptheker v. Secretary of State, 378 U.S. 500, 517, 84 S.Ct. 1659, 1669, 12 L.Ed.2d 992. It cannot be abridged without due process of law. Kent v. Dulles, 357 U.S. 116, 125–126, 78 S.Ct. 1113, 2 L.Ed. 1204; United States v. Laub, 385 U.S. 475, 481, 87 S.Ct. 574, 17 L.Ed.2d 526.

■ A party seeking to support the issuance of an extraordinary writ has the burden of showing exceptional circumstances warranting the relief requested. See De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566. When the relief impinges upon a constitutionally protected personal liberty, that burden must certainly be at least as great as that required to obtain more familiar forms of injunctive relief. In our opinion, the analogy to preliminary injunction actions reveals both procedural and substantive defects in the Government's case.

■ Rule 65(d) of the Federal Rules of Civil Procedure requires any order granting an injunction to set forth the reasons for its issuance and to be specific in its terms. Rule 52(a) requires every order granting an interlocutory injunction to set forth findings of fact and conclusions of law "which constitute the grounds of its action." Comparable requirements should govern the processing of an application for a writ *ne exeat republica*. As a matter of procedure, therefore, the absence of any findings of fact or conclusions of law persuades us that the writ here must be vacated.[6]

■ As a matter of substance, we also find critical weaknesses in the Government's case. At the heart of the matter is the fact that the Government is seeking extraordinary assistance for the purpose of collecting a disputed claim. The jeopardy assessment may well be sufficient to support, for a matter of a few days, a temporary emergency order which would prevent the defendant from defeating the court's jurisdiction. But just as the entry of a temporary restraining order must be promptly followed by an evidentiary hearing to determine whether a preliminary injunction should issue, see General Electric Co. v. American Wholesale Co., 235 F.2d 606, (7th Cir. 1956), we believe that a *ne exeat* writ issued on the basis of an *ex parte* application can authorize no more than a brief period of initial restraint during which the Government has the burden of proving, in an evidentiary hearing, after due notice has been given, its right to have the restraint continue in effect. *Cf.*, Rule 65(b) F.R.Civ.P. In our opinion, that burden includes the obligation of proving probable success on the merits of its underlying claim by evidence other than a mere jeopardy assessment. *Cf.*, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90; Sniadach v. Family Finance Corp., 395 U.S. 337, 343, 89 S.Ct. 1820, 23 L.Ed.2d 349 (Harlan, J., concurring); De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. at 221–222, 65 S.Ct. 1130; Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704; see also Pizzarello v. United States, 408 F.2d

---

king and his realm, therefore, the king, at his pleasure, may command him by his writ that he go not beyond the seas, or out of the realm, without license; and, if he do the contrary, he shall be punished for disobeying the king's command." I Cooley's Blackstone (3d ed.) p. 264.

6. Moreover, the form of the writ did not satisfy the requirement of specificity as to its terms with respect either to the condition of the $450,000 bond or the time or conditions upon which the writ would terminate.

579, 583 (2d Cir. 1969) cert. denied 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450. That showing would also be necessary to determine the amount of security which the court should require as a condition to unrestricted travel.

 The writ must also be supported by findings of fact predicated on evidence showing that the taxpayer's departure will frustrate the collection of the amount due. In United States v. Robbins, 235 F.Supp. 353 (E.D.Ark.1964) the application for the writ was based on an assertion that the taxpayer was in the course of liquidating all of his assets in the United States and transferring those assets or their proceeds to Mexico. The restraint on his departure was intended to frustrate the expatriation of assets within the country. The Government failed to prove the threatened consequence and the writ was vacated.

Here there is no evidence that the taxpayer is in the process of transferring assets abroad, or that he will take any property with him if he is permitted to depart. The transfers identified in the record took place prior to the jeopardy assessments. The Government's theory is that taxpayer's presence is required to enable the court effectively to enforce an order requiring him to repatriate assets now located in Europe. The record does not contain any motion by the Government seeking such relief.[7] We assume that the district court would have the power to enter an order of that kind on the basis of an appropriate showing. See United States v. Ross, 302 F.2d 831, 834 (2d Cir. 1962). Whether such power should be exercised, however, depends on a number of facts which this record does not disclose, at least not with any clarity.

 The nature and extent, if any, of taxpayer's foreign assets is far from clear. Assuming that such assets may exist, the need for such an order may depend on the unavailability of the trust corpus to satisfy the deficiencies, a fact which has been assumed but not demonstrated. Even assuming the existence of foreign assets and the need for a repatriation order, other problems such as the interests of third parties or other sovereigns may be involved.[8] If restraint of a citizen's liberty may be justified as an aid to the enforcement of an order directing repatriation of assets, the Government has the burden of demonstrating probable cause that such an order will be entered. That burden has not been met in this case.

 We are also persuaded that the Government has the burden of demonstrating that the restraint of liberty is a necessary, and not merely coercive and convenient, method of enforcement. The writ should not be employed for any purpose akin to imprisonment for debt, cf., Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130; Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586, or to exact a more favorable compromise from a taxpayer who may have valid defenses to the Government's claim, cf., Perez et ux. v. Campbell, Superintendent, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233.

Without findings of fact by the judge who heard the evidence, we do not know whether he determined that appellant would probably disobey a repatriation order if it should be entered. Other than the pendency of a criminal charge, which, of course, does not overcome the presumption of innocence, we find no evidence in the record that appellant has disobeyed the law or shown disrespect for any court order or proceeding. Even if he departs, the court's jurisdiction over his person will continue. The effectiveness of normal sanctions against a recalcitrant party will be diminished if he is out of the country, but it is not frivolous to assume that a default judgment of about a half million dollars against a

---

7. There is a prayer for such relief in the complaint, but we interpret that prayer to relate to the form of judgment to be entered after trial.

8. See In re Ryan, 430 F.2d 658 (9th Cir. 1970) reversed on other grounds United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85.

would-be international business consultant is a significant sanction. In any event, a finding of necessity for the extraordinary relief requested is, we believe, another condition to the issuance of this extraordinary writ.

 We have considered the possible need for continued restraint to enable the Government to have effective discovery, both on issues of liability and with respect to the location, value, and legal status of appellant's property. In an appropriate case, the detention of a citizen for a limited time for that purpose might be justified. However, in this case we were advised at oral argument that taxpayer has recently testified at an oral deposition and answered without reservation all questions which were asked by Government counsel. We find no basis in the record for continuing the restraint as an aid to discovery.

We have, therefore, concluded that the order denying the motion to quash the writ must be reversed. Rule 41(a) of the Federal Rules of Appellate Procedure provides for the issuance of our mandate in 21 days unless the time is expressly shortened or enlarged. We anticipate that the Government may move for a stay of mandate while a petition for certiorari is prepared and filed, and that appellant may request that the mandate issue forthwith. Since such motions may be supported by facts of which we are unaware, or by authorities we have overlooked, we, of course, cannot now rule definitively on such contingent requests. In view of the unusual nature of the proceeding, however, we believe it appropriate to express the conclusions indicated by our present appraisal of the record.

We will not look with favor on a motion to stay the mandate. The allowance of such a motion might automatically extend the restraint on appellant's liberty for an unwarranted period of time.[9] On the other hand, in recognition of the possibility that an immediate departure of appellant might have the practical consequence of defeating the court's jurisdiction to grant effective relief, we are not directing that our mandate issue forthwith. We have concluded that an interval of 10 days between the receipt of this opinion and the issuance of our mandate is appropriate. As this is an appeal from an interlocutory order, the jurisdiction of the district court to entertain appropriate motions by either party is not impaired. A degree of diligence appropriate to the nature of the case will, however, be required.

The order denying the motion to quash the writ *ne exeat republica* is reversed. This court's mandate will issue on June 25, 1971.

---

9. "If during the period of the stay there is filed with the clerk of the court of appeals a notice from the clerk of the Supreme Court that the party who has obtained the stay has filed a petition for the writ in that court, the stay shall continue until final disposition by the Supreme Court." F.R.Ap.P. 41(b).