*Decision will be entered under Rule 155.*

THOMAS A. SHAHEEN, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2355-71. Filed June 24, 1974.

---

*Ralph A. Muoio*, for the petitioner.
*Marlene Gross*, for the respondent.

### OPINION

DAWSON, *Judge:* On January 2, 1974, pursuant to Rule 120, Tax Court Rules of Practice and Procedure, the respondent filed a motion for judgment on the pleadings in this case on the ground that the United States District Court for the Northern District of Illinois had entered a judgment that was res judicata of the deficiencies in Federal income taxes and additions to the taxes due from the petitioner for the taxable years at issue in this proceeding. A hearing on the motion was held on February 27, 1974. Memorandum briefs have been submitted by both parties. The chronology of pertinent events is set forth below.

On September 14, 1970, prior to the issuance of the notice of deficiency, and on March 19, 1971, after the issuance of the notice of deficiency, the Commissioner made jeopardy assessments of income taxes and additions to the taxes against the petitioner for the years 1966, 1967, and 1968 in the respective amounts of $151,104.40 and $301,430.49.

On November 12, 1970, the respondent mailed to petitioner a statutory notice of deficiency which determined the following deficiencies and additions to tax:

| Taxable year | Deficiency | Additions to tax sec. 6653(b) [1] |
|---|---|---|
| 1966 | $37,434.87 | $18,717.44 |
| 1967 | 165,503.11 | 82,751.56 |
| 1968 | 79,487.87 | 39,743.94 |

On April 1, 1971, prior to the filing of the petition with this Court, the United States filed a complaint against the petitioner in the United States District Court for the Northern District of Illinois seeking to reduce to judgment the jeopardy assessments previously made against him.

---

[1] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

On April 8, 1971, the petitioner filed a timely petition with this Court, reciting that his residence was Rome, Italy.

On April 21, 1971, and on May 6, 1971, petitioner filed motions in the District Court to dismiss the proceeding for lack of jurisdiction over the cause of action and over his person.

On May 27, 1971, respondent filed his answer in this proceeding. On July 14, 1971, petitioner filed his reply to respondent's answer and a motion for a pretrial conference alleging that respondent was forcing him to litigate his tax liabilities for the taxable years at issue in the United States District Court and that he had a statutory right to have these tax liabilities determined in this Court. After hearing on August 25, 1971, the parties were asked to submit written briefs on what, if any, action was warranted on petitioner's motion.

On October 8, 1971, pending submission of the briefs requested, the District Court denied petitioner's motion to dismiss for lack of jurisdiction. The portion of the District Court's oral order denying petitioner's motion to dismiss which is of record in this proceeding reveals that the District Court considered and rejected petitioner's argument that the filing of a Tax Court petition after commencement of the District Court proceeding ousted the District Court of jurisdiction. With respect to the issue of primacy the District Court said:

In his second ground, defendant [petitioner herein] asserts that his invocation of the jurisdiction of the Tax Court, after the commencement of this action by the United States, ousts this court of jurisdiction. No controlling authority is cited. The decisions relied upon involve District Court actions commenced after proceedings had already been filed in the Tax Court. See, e.g., United States v. O'Connor, 291 F. 2d 520, Second Circuit 1961. * * * Defendant seeks to [sic] complete dismissal of the action upon this ground, not merely an order staying proceedings pending developments in the Tax Court. Dismissal on this ground must be denied.

On October 15, 1971, petitioner filed an answer to the complaint in the District Court action. The answer denied that the District Court had jurisdiction over the cause of action alleged or over his person, that the jeopardy assessments were lawfully made, and that he owed the amounts of tax and interest assessed. On October 15, 1971, petitioner also filed in the District Court a motion to stay further proceedings until the case pending in this Court was determined, alleging in his supporting memorandum that he had a statutory right to have his tax liabilities determined in this Court.

On October 27, 1971, this Court held a conference with the attorneys for the parties. Thereafter, on November 23, 1971, an order was issued denying petitioner a further pretrial conference. The memorandum sur order stated the crucial facts of record, the suggestion of the petitioner that this Court enjoin respondent from proceeding with his

suit in the United States District Court, and that, irrespective of this Court's authority to take such action, it was not appropriate in the posture of the case.

On July 21, 1972, the District Court entered an order denying petitioner's motion to stay proceedings reciting as grounds for the exercise of its discretion the petitioner's failure to post bond and his failure to appear in a related criminal case and to appear for his deposition in that action.

On December 22, 1972, the District Court entered a default judgment against petitioner in the amount of $452,534.89, plus interest as provided by law, for his failure to appear at a pretrial conference scheduled by the court. No appeal was filed from this judgment.

On October 25, 1973, respondent moved to file an amendment to answer to raise the defense of res judicata. On November 1, 1973, the petitioner filed a notice of no objection. The Court granted respondent's motion on November 5, 1973. Petitioner's reply to amended answer was filed on November 20, 1973.

As previously stated, on January 2, 1974, respondent moved for judgment on the pleadings since the pleadings raised no genuine issue of material fact and the application of the principle of res judicata is a question of law.

It is the petitioner's position that this Court is the preferred court to handle litigation involving disputes over Federal income taxes. It is also the petitioner's contention that this Court has been given exclusive jurisdiction over these matters if a litigant so desires, except for suits for refund. Even by according this Court sole jurisdiction the petitioner argues that the interests of the Government can be protected in other ways. Petitioner suggests that a writ of ne exeat republica sought pursuant to section 7403 would adequately protect the Government's interest.

Respondent, on the other hand, seems to focus on the crucial issue—the applicability of res judicata in this case.

Res judicata is a judicial doctrine founded in the public policy that there should be an end to litigation and that those who have contested an issue should be bound by the result of the contest. See *Baldwin* v. *Traveling Men's Assn.*, 283 U.S. 522, 525 (1931); and *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U.S. 294, 299 (1917), where the Supreme Court said:

This doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be

recognized by those who are bound by it in every way, wherever the judgment is entitled to respect. [Citation omitted.]

In the landmark case of *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948), the Supreme Court, in further discussing the meaning and scope of the doctrine, said at page 597:

The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell* v. *County of Sac*, 94 U.S. 351, 352. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See Von Moschzisker, "Res Judicata," 38 Yale L.J. 299; Restatement of the Law of Judgments, §§ 47, 48.

At page 598, the Supreme Court applied the concepts of res judicata and collateral estoppel to the Federal income tax field as follows:

These same concepts are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. * * *

In our opinion each element necessary for the application of res judicata exists here. The default judgment of the United States District Court disposed of the entire case before it. From the argument at the hearing on respondent's motion, it is clear that the petitioner does not dispute that the judgment entered on December 22, 1972, was a final judgment from which an appeal could have been taken. Petitioner simply chose not to take the appeal.

From an examination of the complaint and answer in the District Court proceeding it is equally clear that the same causes of action which are at issue here, petitioner's tax liabilities for taxable years 1966, 1967, and 1968, were put in issue in the District Court proceeding. Each taxable year is the origin of a separate liability and of a separate cause of action. *Commissioner* v. *Sunnen, supra*. The petitioner denied liability for all amounts assessed. That the District Court proceeding was an action to render judgment for a specific sum and this proceeding is one for redetermination of deficiencies is im-

material. See *Moreno* v. *Marbil Productions, Inc.*, 296 F. 2d 543 (C.A. 2, 1961).

It is also clear that the parties in the two proceedings are the same, the Commissioner of Internal Revenue being a party in privity with the United States. See *Tait* v. *Western Md. Ry. Co.*, 289 U.S. 620 (1933). Privity between the United States and the Commissioner of Internal Revenue has been recognized by this Court. *John W. Amos*, 43 T.C. 50, 52 (1964), affd. 360 F. 2d 358 (C.A. 4, 1965). The fact that the petitioner was the defendant in the District Court action and is the moving party here does not affect the applicability of the doctrine since the effect of a judgment as res judicata between adverse parties is not dependent upon the arrangement of the parties in the record. See *Chicago, R. I. & P. Ry.* v. *Schendel*, 270 U.S. 611, 615 (1926).

In addition, it is settled law that a default judgment is a judgment on the merits for the purposes of res judicata. *Morris* v. *Jones*, 329 U.S. 545 (1947); *Riehle* v. *Margolies*, 279 U.S. 218 (1929); *Last Chance Min. Co.* v. *Tyler Min. Co.*, 157 U.S. 683 (1895). The rationale for this rule is that the party defaulting has had an opportunity to litigate and his default constitutes an implied admission before the Court of the right of his adversary. See *Last Chance Min. Co.* v. *Tyler Min. Co., supra; Olsen* v. *Muskegon Piston Ring Co.*, 117 F. 2d 163 (C.A. 6, 1941).

The last element prerequisite to the application of res judicata is that the judgment be one rendered by a court of competent jurisdiction, i.e., that it be a valid judgment. The Supreme Court has long held that it is proper practice to inquire into the jurisdiction of the court that rendered the judgment alleged to be res judicata to see if it is a valid judgment. *Thompson* v. *Whitman*, 85 U.S. (18 Wall.) 457, 469 (1873). The scope of the inquiry is limited, however, by decisions of the Supreme Court which hold that a judgment is res judicata even as to questions of jurisdiction when the Court's inquiry discloses that these questions have been litigated and decided in the court which rendered the first judgment. *Durfee* v. *Duke*, 375 U.S. 106, 111 (1963). Since the record herein shows that petitioner appeared and challenged the jurisdiction of the District Court, the judgment of the District Court is res judicata as to the question of jurisdiction as well as other matters that were or could have been litigated in that proceeding and is not subject to collateral attack by petitioner. See and compare *Herman Roberson*, 41 T.C. 577 (1964).

Petitioner's memorandum in opposition to respondent's motion for judgment on the pleadings is clearly a collateral attack on the jurisdiction of the United States District Court. When petitioner moved to

dismiss the District Court action for lack of jurisdiction and later for a stay, petitioner had every opportunity to and did litigate the issue of the District Court's jurisdiction. Whether the District Court was a court of competent jurisdiction and whether it had jurisdiction over the parties and of the subject matter were specifically litigated in the District Court proceeding. The petitioner may not now come into this Court and reargue the same issue of jurisdiction. Not having appealed to the United States Court of Appeals for the Seventh Circuit, we think the issue of the court's jurisdiction is now res judicata.

Moreover, it is our view that no overriding public policy prevents the application of the doctrine of res judicata in this case. The particular cases cited by the petitioner simply emphasize the rarity of those occasions on which the principle of res judicata must give way to some other overriding public policy. The petitioner's argument is that this Court, absent a suit for refund, has exclusive jurisdiction to review the merits of a jeopardy assessment and that its jurisdiction to do so cannot be affected by the judgment of another court. Since this issue was decided against petitioner in the United States District Court for the Northern District of Illinois, what petitioner is really saying is that this Court should ignore the District Court decision if it believes that the District Court was wrong in assuming jurisdiction or in refusing to stay its proceedings pending determination of petitioner's tax liabilities in this Court.

The jurisdiction of a District Court in a civil action such as the one brought by the United States in the District Court in Illinois is stated without limitation, in broad terms, and with specific notation that the remedies provided are in addition to and not exclusive of other remedies. Sec. 7402(a). The authority of the United States to bring a civil action to enforce its liens is also stated unequivocally. Sec. 7403 (a). Where the Congress has deprived either this Court or the District Court of jurisdiction it has spoken plainly. See secs. 6871(b) and 7422(e); *Florida* v. *United States*, 285 F. 2d 596, 604 (C.A. 8, 1960).

District Courts have interpreted their jurisdiction to permit them to examine the merits of a jeopardy assessment in a collection action where there has been no prior Tax Court adjudication. See *Plisco* v. *United States*, 306 F.2d 784 (C.A. D.C. 1962), affirming 192 F. Supp. 337 (D. D.C. 1961), certiorari denied 371 U.S. 948 (1963) (suit to reduce jeopardy assessments to judgment; tax liability determined); *United States* v. *Rexach*, 482 F. 2d 10 (C.A. 1, 1973), reversing on other grounds 331 F. Supp. 524 (D. P.R. 1971), certiorari denied 414 U.S. 1039 (1973) (action to foreclose liens; tax liability determined).

Petitioner is urging as an overriding policy consideration his view that the District Court decision on jurisdiction was wrong and, there-

fore, should not prevent a collateral attack on the District Court judgment in this Court. This is not the kind of overriding policy consideration which the Supreme Court has mentioned. If it were, there would be no finality to any decision and there would be no distinction between direct and collateral attack. One court would, in effect, be exercising appellate jurisdiction over another, and judicial finality, the objective of res judicata, would be subverted.

Although there is no decision of the Court of Appeals for the Seventh Circuit expressing an opinion on the scope of a District Court's jurisdiction, it is noted that just 4 months before the District Court's denial of petitioner's motion to dismiss for lack of jurisdiction, a decision of that circuit reversed the District Court for denying petitioner's motion to quash a writ of ne exeat republica issued against him. In *United States* v. *Shaheen*, 445 F. 2d 6, 10 (1971), the Seventh Circuit said:

We believe that a *ne exeat* writ issued on the basis of an *ex parte* application can authorize no more than a brief period of initial restraint during which the Government has the burden of proving, in an evidentiary hearing, after due notice has been given, its right to have the restraint continue in effect. * * * *In our opinion, that burden includes the obligation of proving probable success on the merits of its underlying claim by evidence other than a mere jeopardy assessment.* * * * [Citations omitted. Emphasis supplied.]

The above-quoted language does not indicate a reluctance on the part of the Seventh Circuit to permit the District Court to inquire into the underlying merits of tax claims in suits under section 7402.

After the petitioner raised, litigated, and lost the issue of the jurisdiction of the District Court before that court, he made a calculated decision not to appeal. Whether he was influenced by the language quoted above is not shown by the record, but to argue now that the District Court erred in its decision is to request this Court to second guess that court. The public interest in having a decision of the court respected, especially when there are adequate means of appeal to review an erroneous judgment, dictates that this not be done. See 1B Moore, Federal Practice, par. 0.405, pp. 648–649 (2d ed. 1974).

In essence, the petitioner makes a plea for special relief from individual hardship. His predicament is of his own making. It is a result of his failure to follow a course available to him—an appeal to the Seventh Circuit.

Accordingly, we conclude that res judicata applies in these circumstances. Respondent's motion for judgment on the pleadings will be granted, and a decision will be entered in accordance with the judgment of the United States District Court for the Northern District of Illinois.

*An appropriate order and decision will be entered.*