T.C. Memo. 2017-7

UNITED STATES TAX COURT

ISIDRO GARZA, JR., AND MARTHA C. GARZA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3217-15, 6460-15.　　　　　Filed January 5, 2017.

<u>Walter A. Boyd, III</u>, for petitioners.

<u>Mark Alexander Ericson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  In these consolidated cases, respondent determined
the following deficiencies, penalties, and additions to tax:

[*2]

Isidro Garza, Jr.

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2000 | $61,330.00 | $13,799.25 | $15,332.50 | $3,298.63 |
| 2001 | 60,192.00 | 13,543.20 | 15,048.00 | 2,405.49 |

Martha C. Garza

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2000 | $47,806.00 | $10,756.35 | $11,951.50 | $2,571.25 |
| 2001 | 45,377.00 | 10,209.83 | 11,344.25 | 1,813.42 |

Isidro Garza, Jr. and Martha C. Garza

| Year | Deficiency | Penalties sec. 6663(a) |
|---|---|---|
| 1998 | $47,791.00 | $35,843.25 |
| 2002 | 145,328.50 | 108,996.38 |

Respondent issued separate notices of deficiency to petitioner husband and petitioner wife for tax years 2000 and 2001.

**[*3]**  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

Petitioners conceded in full the deficiencies respondent determined for tax years 1998, 2000, 2001, and 2002.  Petitioners conceded in full the additions to tax pursuant to section 6651(a)(1) and (2) and section 6654 for tax years 2000 and 2001.  The only issue for consideration is whether petitioners are liable for fraud penalties pursuant to section 6663 for tax years 1998 and 2002.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  Petitioners resided in Texas when the petitions in these consolidated cases were timely filed.  Petitioners were married at the time the petitions were filed and remain married.

General Background

Petitioner husband graduated from Texas A&M University with a degree in mechanical engineering in 1974.  In or about 1982 he worked as the city manager for Eagle Pass, Texas.  In or about 1995 petitioner husband organized Bay Area

[*4] Consultants, Inc. (BAC), an engineering firm that operated out of League City, Texas.

BAC elected to be treated as a subchapter S corporation. During the years at issue BAC's shares were owned by petitioners' two sons, but petitioner husband controlled BAC and its activities. Petitioner wife worked as BAC's office manager and bookkeeper. Petitioner wife has never had any formal or informal training in keeping books or records. Petitioner wife hired certified public accountants (C.P.A.s) to prepare BAC's 1995 corporation income tax return, which was filed on or about April 7, 1997. BAC did not file a Federal income tax return for any year after 1995.

Petitioners' Business Activities

During the years at issue petitioner husband was the tribal representative of the Kickapoo Traditional Tribe of Texas (tribe), an Indian tribe recognized by the U.S. Government. As tribal representative petitioner husband managed the tribe's Kickapoo Lucky Eagle Casino (casino). The parties stipulated that petitioner wife acted as petitioner husband's bookkeeper and administrative assistant at the casino. At trial petitioner wife disavowed her stipulated roles, testifying that she performed only secretarial tasks at the casino.

[*5]  Petitioner husband provided engineering services to the tribe.  BAC billed the tribe for petitioner husband's engineering projects.  Neither petitioner husband nor petitioner wife is a member of the tribe.

Petitioner Husband's Management Fees

As the casino's manager petitioner husband was entitled to receive 10% of the casino's net monthly income as a management fee.[1]  Petitioner husband instructed the tribe and the casino to pay his management fees to BAC.  BAC billed the tribe for petitioner husband's services as casino manager.

During 1998 the tribe authorized six wire transfers totaling $76,844 from the tribe's casino revenue account to BAC and issued several checks totaling $52,600, made payable to BAC, for petitioner husband's management fees. Petitioner wife was aware of the 1998 management fees paid to petitioner husband and deposited into BAC's bank account.  Petitioner husband or BAC also withdrew $35,250 in cash from the casino's vault during 1998.  None of the cash withdrawals from the casino's vault equaled or exceeded $10,000.

---

[1]During the first three months of 1998 petitioner husband was entitled to receive $5,000 a month as his management fee.  On February 13, 1998, the tribe's council increased petitioner husband's management fee, retroactive to December 1997, to 10% of the casino's net monthly income.

[*6] After 1998 BAC did not exist as a legal corporate entity but continued to maintain a bank account, which received petitioner husband's management fees from the tribe and the casino. During 2000 the casino issued several checks made payable to petitioner husband or BAC totaling $222,500 for petitioner husband's management fees. Petitioner husband was aware that some of the checks were issued to BAC because he cosigned and cashed several of the checks from the casino. Petitioner husband or BAC received $59,600 of cash distributions from the casino's vault during 2000. Only one of the cash distributions equaled or exceeded $10,000.

During 2001 the casino issued checks made payable to petitioner husband or BAC totaling over $278,000 as partial payment for his management fees. Petitioner husband withdrew $35,050 in cash from the casino's vault. During 2002 the casino issued several checks payable to petitioner husband totaling over $251,400 for his management fees. The casino also disbursed $278,650 in cash from its vault to petitioner husband for his management fees. None of the cash withdrawals made by petitioner husband or BAC from the casino's vault during 2001 or 2002 equaled or exceeded $10,000.

During the years at issue petitioners had access to the management fees deposited into BAC's bank account and used those fees to pay personal expenses.

[*7] Petitioners conceded that the wire transfers, checks, and cash disbursements issued to BAC were petitioner husband's management fees. The parties stipulated that petitioner husband was aware of the internal revenue laws requiring that cash receipts over $10,000 be reported to the Internal Revenue Service (IRS).

Petitioner husband admitted that he had received at least $535,084 of income from the tribe and/or casino during 2002. In October 2002 the tribe's new government fired petitioner husband from his position as tribal representative. The tribe's new government seized petitioners' financial records on October 28, 2002.

Petitioners' Tax Reporting

1998

Petitioners filed a Federal joint income tax return for 1998, reporting less than $24,500 of gross income. Petitioners conceded that they omitted $139,594 of income for 1998. When petitioners filed their joint 1998 tax return, none of their personal business records had been seized by the tribe or the U.S. Government.

When petitioner wife prepared and signed petitioners' 1998 Form 1040A, U.S. Individual Income Tax Return, she was aware of the management fees paid to petitioner husband and deposited into BAC's bank account. She testified that the income reported on their 1998 tax return came from checks petitioners drew on

[*8] BAC's bank account to pay personal expenses. She was aware that BAC had not reported any of the management fees on a Federal income tax return.

In 2008 petitioners hired an accountant to prepare a Form 1040X, Amended U.S. Individual Income Tax Return, for 1998. On the Form 1040X petitioners reported on Schedule C, Profit or Loss From Business, gross receipts of $238,923, cost of goods sold of $40,090, and Schedule C expenses of $138,428. Petitioner husband testified that the gross receipts reported on the Form 1040X were earned by BAC. The Form 1040X, however, was not BAC's Federal income tax return. The Form 1040X represented petitioners' joint amended 1998 Federal income tax return. Petitioners' Form 1040X was prepared in 2008 as part of petitioner husband's preparation for his criminal trial. There is no evidence that this return was filed.

### 2000 and 2001

Although petitioners hired the accounting firm Leal & Carter, P.C., to prepare a joint tax return for 2000, they failed to file a Federal income tax return for 2000. Petitioners also failed to file a Federal income tax return for 2001. Petitioners conceded that they received $317,814 and $313,207 of income for 2000 and 2001, respectively.

**[*9]**  2002

Petitioners filed a Federal joint income tax return for 2002, reporting $200,000 of gross income. Petitioners conceded that they omitted $335,084 of income for 2002. When petitioners filed their 2002 joint Federal income tax return, they were aware that BAC had never reported on a Federal income tax return any of petitioner husband's management fees deposited into BAC's bank account.

Petitioners' Illegal Activities and Guilty Pleas

On December 9, 2004, petitioners were indicted by a Federal grand jury on several counts relating to tax evasion in violation of section 7201 and 18 U.S.C. sec. 371, and misappropriation of Indian tribal funds in violation of 18 U.S.C. secs. 1163 and 1168. On October 24, 2006, petitioners pleaded guilty to the charges but withdrew their pleas on the day of sentencing.

In October 2007, after a criminal trial in the U.S. District Court for the Western District of Texas, Waco Division, the jury found petitioner husband guilty of multiple counts of conspiracy to commit theft from an Indian tribal organization in violation of 18 U.S.C. sec. 1163 and theft by officers or employees of gaming establishments on Indian lands in violation of 18 U.S.C. sec. 1168. The jury also found both petitioners guilty of tax evasion in violation of section 7201

[*10] for tax years 1998 through 2002 and conspiracy to evade payment of tax in violation of 18 U.S.C. sec. 371 for 1995 through 2003.

Petitioners appealed the verdicts, and on January 26, 2010, the Court of Appeals for the Fifth Circuit vacated their convictions and remanded petitioners' cases for a new trial. Petitioners subsequently entered new guilty pleas.

Petitioner Husband's Guilty Plea

On March 14, 2012, in the U.S. District Court for the Western District of Texas, Del Rio Division, petitioner husband pleaded guilty to two counts of conspiracy in violation of 18 U.S.C. sec. 371. Petitioner husband admitted:

> Beginning in or about February 13, 1998, and continuing to on or about October 28, 2002, in the Western District of Texas and elsewhere, * * * [petitioner husband] and others known and unknown did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit: commit theft by officers and employees from gaming establishments on Indian lands in violation of 18 U.S.C. sec. 1168 * * *

> [And] beginning in or about October 18, 1995, and continuing to on or about April 15, 2003, in the Western District of Texas * * * [petitioner husband] did unlawfully, willingly and knowingly combine, conspire, confederate and agree with other individuals both known and unknown to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the * * * [IRS] of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes. To effect the purpose and objects of this conspiracy, * * * [petitioner husband] committed various of the overt acts * * * including, but not limited to the following: on or

[*11] about April 15, 2003, * * * [petitioner husband] and * * * [petitioner wife] filed a false U.S. joint income tax return for the year 2002.

Petitioner Wife's Guilty Plea

On March 14, 2012, petitioner wife pleaded guilty to one count of tax evasion in violation of section 7201 in the U.S. District Court for the Western District of Texas, Del Rio Division. Petitioner wife admitted:

> On or about April 15, 2003, in the Western District of Texas, * * * [petitioner wife] willfully attempted to evade or defeat a substantial portion of the [F]ederal income tax then due and owing by herself and her husband by filing a false U.S. joint income tax return for the calendar year 2002. The return was false in that it stated that their joint taxable income for the calendar year was the sum of $186,150 and that the amount of tax due and owing thereon was the sum of $54,275, whereas, as she then and there well knew and believed, their joint taxable income for the said calendar year was substantially in excess of the amounts stated and that * * * there was a substantial additional tax [that] was due and owing to the United States of America.

The Examination

An IRS revenue agent initially contacted petitioners regarding the examination for the years at issue when petitioners were incarcerated. Petitioner wife responded that "she did not have access to her records." Petitioner husband was uncooperative, telling the revenue agent that "the * * * [IRS] could have 10 cents out of his 30 cents that he made an hour for the deficiency."

**[*12]** The revenue agent attempted to contact petitioners a second time but did not receive any response. Petitioner husband subsequently sent the IRS a letter, dated August 28, 2012, explaining that he did not owe any money because a U.S. District Court judge had denied the Government's claim for restitution in his criminal proceeding.

OPINION

I.    Statutory Framework

Fraud is an intentional wrongdoing on the part of a taxpayer with the specific purpose to evade a tax believed to be owed. Sadler v. Commissioner, 113 T.C. 99, 102 (1999). The section 6663(a) fraud penalty is a civil sanction provided primarily as a safeguard for protection of revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. at 102. The Commissioner has the burden of proving by clear and convincing evidence an underpayment exists for each year at issue and the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). The Commissioner must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988).

**[\*13]** If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud and subject to a 75% penalty unless the taxpayer establishes that some part of the underpayment is not attributable to fraud. Sec. 6663(a) and (b). In the case of a joint Federal income tax return, the section 6663 penalty "shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse." Sec. 6663(c).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud may be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available. Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992). Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including, but not limited to, the consistent understatement of income, filing false documents, including false income tax returns, engaging in illegal activities, concealing assets, engaging in extensive dealings in cash, implausible or inconsistent explanations of behavior, inadequate records, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Toussaint v.

[*14] Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), aff'g T.C. Memo. 1984-25; Parks v. Commissioner, 94 T.C. 654, 664-665 (1990). The existence of any one factor is not dispositive, but the existence of several factors is persuasive circumstantial evidence of fraud. See Niedringhaus v. Commissioner, 99 T.C. at 211; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

II.    Collateral Estoppel

We first must address whether petitioner wife is collaterally estopped from asserting a defense to a civil fraud penalty for tax year 2002. Respondent contends that petitioner wife is collaterally estopped because on March 14, 2012, she pleaded guilty to tax evasion for tax year 2002 in violation of section 7201. Collateral estoppel is established where: (1) the party to be estopped was a party to or assumed control of the prior litigation; (2) the issues presented are in substance the same as those resolved in the earlier litigation; (3) the controlling facts or legal principles have not changed significantly since the earlier litigation; and (4) other special circumstances warrant an exception to the normal rules of preclusion. Klein v. Commissioner, 880 F.2d 260, 262-263 (10th Cir. 1989)

**[\*15]** (citing <u>Montana v. United States</u>, 440 U.S. 147, 153-155 (1979)), <u>aff'g</u> T.C. Memo. 1984-392. Petitioner wife concedes that her plea agreement meets the first three elements of collateral estoppel.

Petitioner wife argues that her guilty plea should not preclude her from contesting the section 6663(a) fraud penalty for tax year 2002 because "other special circumstances warrant an exception to the normal rules of preclusion." <u>Id.</u> Petitioner wife argues: (1) her guilty plea agreement is binding only between the U.S. Attorney's Office and her and cannot be relied upon by respondent; (2) her motivation for entering the guilty plea was that she had already served nearly three years before her initial conviction was reversed and the plea agreement would be enforced only were the U.S. District Court to sentence her to time served; and (3) her admission of the factual basis for the plea agreement was limited to what the Government's evidence at trial might be, not the totality of the evidence.

We have held repeatedly that a taxpayer is collaterally estopped from denying civil tax fraud under section 6663 when convicted for criminal tax evasion under section 7201 for the same taxable year. <u>DiLeo v. Commissioner</u>, 96 T.C. at 885. A guilty plea is equivalent to a conviction after trial for the purpose of collateral estoppel. <u>See</u> <u>Arctic Ice Cream Co. v. Commissioner</u>, 43 T.C. 68, 75 (1964). Petitioner wife's guilty plea conclusively establishes the elements

[*16] necessary for finding fraud under section 6663 because the elements of criminal tax evasion and civil tax fraud are identical. Brooks v. Commissioner, 82 T.C. 413, 431 (1984), aff'd without published opinion, 772 F.2d 910 (9th Cir. 1985); Amos v. Commissioner, 43 T.C. 50, 55-56 (1964), aff'd, 360 F.2d 358 (4th Cir. 1965).

The fact that petitioner wife's plea agreement does not mention the Commissioner is irrelevant because the Commissioner is in privity with the United States, the plaintiff in petitioner wife's criminal proceedings. See Gammill v. Commissioner, 62 T.C. 607, 614 (1974); Shaheen v. Commissioner, 62 T.C. 359, 364 (1974). The factual basis in petitioner wife's plea agreement is specific and convincing evidence of fraud. She produced no evidence showing that the facts admitted are inaccurate. Her motivation for entering into the plea agreement is irrelevant and does not undermine the reliability of the admissions she made therein. Petitioner wife is collaterally estopped from denying the existence of fraud for tax year 2002. Therefore, petitioner wife is liable for the section 6663 penalty for tax year 2002.

III.    Underpayment of Tax

Petitioners conceded that they understated their 1998 and 2002 Federal income tax by $47,791 and $145,329, respectively. Accordingly, respondent has

**[\*17]** proven by clear and convincing evidence that petitioners underpaid their Federal income tax for the years at issue. See DiLeo v. Commissioner, 96 T.C. at 886.

IV. Badges of Fraud

A. Understatement of Income

Petitioners conceded that they understated their 1998 and 2002 gross income by $139,594 and $335,084, respectively.[2] Petitioners also conceded that they understated their income for 2000 and 2001. Petitioners failed to file a Federal income tax return for 2000 or 2001, failing to report income of $317,814 and $313,207, respectively. Consistently underreporting substantial amounts of income for several years, standing alone, is strong evidence of fraud. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), aff'g T.C. Memo. 1985-148.

Petitioners contend that their understatements do not constitute evidence of fraudulent intent because petitioner wife lacked the expertise to calculate petitioners' income properly and prepare their returns. Taxpayers cannot rely on their own accounting inexperience if the record shows that they had sufficient

---

[2]Even though we have concluded that petitioner wife is liable for the sec. 6663 penalty for tax year 2002, we still need to consider whether petitioner husband is liable for the sec. 6663 penalty for tax year 2002 and whether petitioners are liable for the sec. 6663 penalty for tax year 1998.

[*18] business experience and knew that the income was underreported. See Webb v. Commissioner, 394 F.2d 366, 379-380 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. The record establishes that petitioners knew their income was substantially greater than that reported on their returns.

Petitioner wife worked as BAC's bookkeeper, and the parties stipulated that she also worked as the casino's bookkeeper. At the time petitioner wife prepared and signed petitioners' 1998 and 2002 Forms 1040A, she was aware that petitioner husband had received a management fee of 10% of the casino's net monthly profit, which was deposited into BAC's bank account. She was also aware that BAC had not reported on an income tax return any of the management fees that the tribe or the casino deposited into its bank account. She had actual knowledge that their income was greater than what they reported on their returns.

Petitioner wife hired a C.P.A. to prepare BAC's tax return for 1995, which was the only return BAC ever filed. Petitioners also hired a C.P.A. to prepare their joint tax return for 2000 but failed to file the return and failed to report income of $317,814. It was petitioners' choices, not their limited bookkeeping experience, to prepare and file false tax returns for 1998 and 2002.

Petitioner husband graduated from Texas A&M University with an engineering degree, was a city manager for Eagle Pass, Texas, ran his own

**[\*19]** engineering consulting firm, and managed the tribe's casino. Given his education and work experience, we expect that he understands that records should be kept. See Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986) (finding that although a taxpayer had limited formal training in accounting and finance, he did have practical experience gained from operating his own business), aff'g T.C. Memo. 1985-63. Petitioner husband cannot be excused from keeping accurate records and should have known that petitioners had underreported their income for 1998 and 2002. Petitioners' pattern of consistent understatement of substantial amounts of income is evidence of fraud.

B.    Filing False Documents

Fraudulent intent may be inferred when a taxpayer files a tax return intending to conceal, mislead, or prevent the collection of tax. See Spies v. United States, 317 U.S. 492, 499 (1943).

1.    Petitioner Wife 1998

Petitioner wife prepared and signed petitioners' 1998 Form 1040A, reporting less than $24,500 of gross income. Petitioners conceded, however, that they failed to report $139,594 of income for 1998.

When petitioner wife prepared and signed the Form 1040A, she was aware of the management fees paid to petitioner husband and deposited into BAC's bank

[*20] account.  She testified that the income reported on the Form 1040A came from checks petitioners drew on BAC's bank account to pay personal expenses. She was further aware that BAC had not reported any of the management fees on a Federal income tax return.  When petitioner wife prepared petitioners' Form 1040A, neither the tribe nor the U.S. Government had seized their personal and business records.  The record establishes that petitioner wife intended to conceal, mislead, or prevent the collection of tax.  See id.

In 2008 petitioners hired a C.P.A. to prepare an amended joint income tax return, reporting $238,923 of gross receipts.  A fraudulent original return, however, is not purged by the subsequent filing of a correct amended return (assuming arguendo that their 1998 Form 1040X was correct and was in fact filed).  Badaracco v. Commissioner, 464 U.S. 386, 394 (1984).  The fraud is committed when the original return is prepared and filed.  Id.  Petitioner wife's actions are evidence of fraudulent intent.

### 2.    Petitioner Husband

On March 14, 2012, petitioner husband pleaded guilty to conspiracy to defraud the IRS in violation of 18 U.S.C. sec. 371.  Respondent argues that petitioner husband's guilty plea is evidence of his fraudulent intent to file false tax returns for 1998 and 2002.  In his plea agreement petitioner husband admitted that

**[\*21]** "[b]eginning in or about October 18, 1995, and continuing to on or about April 15, 2003," he willingly and knowingly conspired to defraud the IRS.

Petitioner husband's guilty plea is evidence of fraud for 1998 and 2002. See McGee v. Commissioner, 61 T.C. 249, 260 (1973) (finding that we may infer fraudulent intent from evidence a taxpayer was attempting to defraud another), aff'd, 519 F.2d 1121 (5th Cir. 1975); see also Mobley v. Commissioner, T.C. Memo. 1993-60, 1993 WL 42836, at \*5 (finding that taxpayer's conviction for conspiracy to defraud the Government creates powerful inference of fraudulent intent), aff'd without published opinion, 33 F.3d 1382 (11th Cir. 1994). In his plea agreement petitioner husband also admitted that he filed a false U.S. joint income tax return for 2002. By filing a false tax return petitioner attempted to conceal the fact that his taxable income for 2002 was substantially in excess of the amount reported on his tax return. Petitioner husband's filing of a false tax return is further evidence of his fraudulent intent to evade the payment of tax for the years at issue. See Klassie v. United States, 289 F.2d 96, 102 (8th Cir. 1961).

C.    Engaging in Illegal Activity

A taxpayer's conviction for crimes related to the understatement of tax for the years at issue is evidence of fraudulent intent. See Bradford v. Commissioner, 796 F.2d at 307-308. Petitioner husband engaged in criminal activity as shown by

[*22] his pleading guilty to conspiring to "commit theft by officers and employees from gaming establishments on Indian lands" in violation of 18 U.S.C. sec. 1168 and conspiring to commit tax evasion by defrauding the IRS in violation of 18 U.S.C. sec. 371. Petitioner wife engaged in criminal activity as shown by her pleading guilty to committing tax evasion in violation of section 7201. Petitioners' illegal activity is evidence of fraud.

### D. Concealing Assets or Income

An intent to evade tax may be inferred by "concealment of assets or covering up sources of income". Spies, 317 U.S. at 499. A taxpayer's use of a business to conceal the personal nature of expenses is also evidence of fraud. Evans v. Commissioner, T.C. Memo. 2010-199, aff'd, 507 F. App'x 645 (9th Cir. 2013).

Petitioner husband instructed the tribe and the casino to pay his management fees to BAC's bank account. Petitioners had access to the management fees deposited into BAC's bank account and used those fees to pay personal expenses. Petitioner husband or BAC withdrew cash from the casino's vault. Petitioners failed to report as income petitioner husband's management fees deposited into BAC's bank account for 1998 and 2002. Petitioners knew that BAC did not exist as a corporate entity after 1998, but petitioner husband still

[*23] instructed the tribe and the casino to pay his management fees to BAC. At the time petitioner wife prepared and signed petitioners' 1998 and 2002 Forms 1040A, she knew that BAC had never reported any of the management fees as income on a tax return. The evidence clearly establishes that petitioners used BAC to conceal their income. See Cefalu v. Commissioner, 276 F.2d 122, 129 (5th Cir. 1960), aff'g T.C. Memo. 1958-37.

E.    Extensive Dealings in Cash

Fraudulent intent may be inferred when a taxpayer handles his affairs in a manner designed to "avoid making the records usual in transactions of the kind". Spies, 317 U.S. at 499. When a taxpayer's dealings in cash are accompanied by attempts to conceal transactions or avoid cash transaction reporting requirements, that course of conduct is probative evidence of fraud. See Valbrun v. Commissioner, T.C. Memo. 2004-242.

From 1998 through 2002 petitioner husband or BAC withdrew $408,550 from the casino's vault as partial payment for petitioner husband's management fees. All withdrawals but one were in amounts less than $10,000. Petitioner husband was aware of the internal revenue laws requiring that cash receipts over $10,000 be reported to the IRS. Petitioner husband's extensive dealings in cash accompanied by his pattern of withdrawing cash amounts just below the $10,000

**[\*24]** bank reporting threshold is emblematic of his intent to conceal income. See McClellan v. Commissioner, T.C. Memo. 2013-251, at \*27-\*28. Petitioner husband's course of conduct is evidence of fraud.

F.     Implausible or Inconsistent Explanations

Implausible or inconsistent explanations for a taxpayer's actions may constitute circumstantial evidence of fraudulent intent. Toussaint v. Commissioner, 743 F.2d at 312. Petitioners gave inconsistent and implausible explanations for their conduct throughout trial and on brief. Petitioner wife stipulated that she worked as the bookkeeper for the casino but later disavowed the stipulation, which was signed by her attorney on her behalf, testifying that she performed only secretarial tasks. A stipulation that only one of the parties challenges is generally treated as a conclusive admission to the extent of its terms, and the party is not allowed to qualify, change, or contradict any or all parts of a stipulation unless justice requires. Rule 91(e); Chapman Glen Ltd. v. Commissioner, 140 T.C. 294, 317 (2013). We are not persuaded that petitioner wife's equivocal testimony supports a conclusion that justice requires us to disregard the parties' stipulation regarding her roles at the casino.

Petitioner wife was aware of petitioner husband's management fees deposited into BAC's bank account and that BAC had never reported the fees as

[*25] income on a tax return. She claimed, however, that the fees were not petitioners' income. Inconsistently with her previous assertions, she later testified that the tribe and the casino paid the management fees to BAC because petitioner husband and BAC "were one in the same, I would think".

Petitioner husband admitted that the wire transfers, checks, and cash disbursements issued to BAC were income to him yet later testified that the income was attributable to BAC for "building a highway 96 between League City and Kemah." Petitioners further testified that the tribe's government seized their records, making it impossible for them to report income properly on their joint Federal tax returns for 1998 and 2002. The tribe, however, did not seize their records until October 2002. Petitioners' testimony was not credible, and we find that petitioners' true intentions were to conceal their income from the IRS.

G.    Other Badges of Fraud

Other badges of fraud include petitioners' failure to keep adequate records and cooperate with respondent's revenue agent. The fact that the tribe seized petitioners' books and records on October 28, 2002, does not excuse petitioners' failure to report accurately their income for 1998, 2000, or 2001. Petitioner wife testified that the income reported on petitioners' 1998 Form 1040A came from checks petitioners drew on BAC's bank account for personal expenses. Her

[*26] testimony evidences an absence of adequate books and records for 1998. Petitioner husband further testified that the amounts on petitioners' 1998 Form 1040X came from reconstructed bank records but did not offer into evidence any documents.

Petitioners did not introduce any evidence of adequate books and records for 2000 or 2001, years for which they failed to file tax returns and omitted $317,814 and $313,207 of income, respectively. Nor is there any evidence that petitioners started to maintain books and records for 2002. The record is devoid of any evidence showing that petitioners ever maintained books and records for any of the years at issue.

Petitioner husband failed to cooperate with respondent's revenue agent. When initially contacted by respondent's revenue agent regarding the examination for the taxable years at issue, petitioner husband responded that "the IRS could have 10 cents out of his 30 cents that he made an hour for the deficiency." The revenue agent attempted to contact petitioners a second time, but to no avail. The IRS subsequently received a letter from petitioner husband indicating that petitioners did not owe money to the IRS because a U.S. District Court judge had denied the Government's claim for restitution. Petitioner husband's lack of cooperation is further evidence of fraud.

**[*27]** V.   <u>Conclusion</u>

Respondent has shown by clear and convincing evidence that petitioners underpaid their tax for 1998 and 2002 and that some part of petitioners' underpayment for each year was due to fraud.  Petitioners have not introduced any credible evidence to prove that any specific portion of either underpayment was not attributable to fraud.  Petitioners are liable for the section 6663 civil fraud penalties for tax years 1998 and 2002.

Any contention we have not addressed is irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decisions will be entered for</u>

<u>respondent</u>.